1   ROBERT S. NELSON (CA SBN 220984)
    RNelson@nelsonlawgroup.net
2   NELSON LAW GROUP
    900 Cherry Avenue, Suite 300
3   San Bruno, CA 94066
    Telephone: (650) 794-2760
4   Facsimile: (650) 794-2761

5   *Attorneys for Plaintiffs*

6   WALTER V. SIEBERT (*Pro Hac Vice*)         RAYMOND L. WHEELER (CA SBN 52886)
    BSiebert@sah.com                           RWheeler@mofo.com
7   SHERMAN & HOWARD L.L.C.                     SHARYN K. FUNAMURA (CA SBN 193518)
    633 Seventeenth Street, Suite 3000         SFunamura@mofo.com
8   Denver, CO 80202-3622                      MORRISON & FOERSTER LLP
    Telephone: (303) 297-2900                  755 Page Mill Road
9   Facsimile: (303) 298-0940                  Palo Alto, CA 94304-1018
                                               Telephone: (650) 813-5600
10                                             Facsimile: (650) 494-0792

11  *Attorneys for Defendant*

12
                        UNITED STATES DISTRICT COURT
13
                      NORTHERN DISTRICT OF CALIFORNIA
14
                          SAN FRANCISCO DIVISION
15

16
17  ANGELA BADAMI,                             Case No. C 07-03465 JSW
    LENNON BRONSEMA,
18  BENJAMIN CAMPOPIANO,                       **MEMORANDUM OF POINTS AND**
    KATHRYN RAVEN,                             **AUTHORITIES IN SUPPORT OF**
19  AUDREY WARD,                               **JOINT MOTION FOR ORDER**
    and all others similarly situated          **PROVISIONALLY CERTIFYING**
20                                             **SETTLEMENT CLASS AND**
                                               **PRELIMINARILY APPROVING**
21          Plaintiffs,                         **SETTLEMENT AND PROPOSED**
           v.                                  **NOTICE TO CLASS MEMBERS**
22
23  GRASSROOTS CAMPAIGNS, INC.,
                                               Date:    January 28, 2008
24          Defendant.                         Time:    9:00 a.m.
                                               Judge:   Hon. Jeffrey S. White
25                                             Ctrm:    2

26
27                                          i
28

1

# TABLE OF CONTENTS

2

3

INTRODUCTION…………………………………………………….…………1

FACTS AND PRODCEDURAL BACKGROUND……..……………………………...1

4

5

    1.    General Background………………………………………………1

    2.    The Case………………………………………………………2

6

    3.    Mediation………………………………………………………3

7

SETTLEMENT TERMS………………………………………………4

8

    1.    Monetary Relief………………………………………………..…4

9

    2.    Payments to Settlement Class Members…………………………………5

10

        a.  General………………………………………………….………5

        b.  Payments to members of the Salaried Subclass………………………5

11

        c.  Payments to members of the California Non-Payment Subclass……………6

12

        d.  Payments to Opt Ins……………………………………………6

13

    3.    Non-Monetary Relief………………………………………………7

14

        a.  Hiring a Human Resources official…………………………………7

15

        b.  No unpaid training days…………………………………………..7

        c.  Expense reimbursements…………………………………………8

16

        d.  Days off……………………………………………………8

17

ARGUMENT………………………………………………………8

18

I.    PRELIMINARY APPROVAL OF THIS SETTLEMENT

19

    IS APPROPRIATE………………………………………………8

20

A.    The terms of the Settlement Agreement are fair and within the

21

    range of reasonableness…………………………………………………9

22

    1.    The Settlement Agreement resulted from informed, arms'

        length negotiations by experienced Class Counsel………………………9

23

24

    2.    The Settlement amount and payment allocations are fair and

        reasonable…………………………………………………………10

25

        a.    Claim allocations…………………………………………10

26

        b.    Incentive payments…………………………………………11

27

    3.    The Settlement provides meaningful non-monetary relief…………………11

28

i

4.    The Settlement provides reasonable compensation in light
of the significant risks of proceeding through litigation…………………………11

II.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS
IS APPROPRIATE AT WELL…………………………………………………………..12

1.    Numerosity……………………………………………………………………12

2.    Commonality…………………………………………………………………..12

3.    Typicality…………………………………………………………………………13

4.    Adequacy……………………………………………………………………13

5.    Rule 23(b)………………………………………………………………...………13

III.    THE PROPOSED NOTICE PROVIDES FAIR AND ADEQUATE
NOTICE TO ABSENT CLASS MEMBERS…………….…………………………………14

IV.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL…………..15

V.    THE PROPOSED SCHEDULING ORDER…………………………………………..16

CONCLUSION………………………………………………………………………...…16

ii

# TABLE OF AUTHORITIES

## CASES

*Churchill Village, LLC v. General Elec.,*
    361 F.3d 566 (9th Cir. 2004)…………………………………………………….8

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980)…………………………………………………….9

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)……………………………………...……12, 13

*In re DJ Orthopedics, Inc.*
    2004 WL 1445101 (S.D. Cal. June 21, 2004)…………………………………..…8, 9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
    55 F.3d 768 (3rd Cir 1995)…………………………………………………….12

*Kirkorian v. Borelli,*
    695 F.Supp. 446 (N.D. Cal. 1988)……………………………………………….9

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978)…………………………………………………..13

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)……………………………………………...……8

*Roberts v. Heim,*
    1991 WL 427888 (N.D. Cal. Aug. 28, 1991)…………………………………………..9

*Safeco Corp. v. Van Bronkhorts,*
    529 F.2d 943 (9th Cir. 1976)…………………………………………………….8

*Weinberger v. Kendrick,*
    698 F.2d 61 (2nd Cir. 1982)…………………………………………………….8

*Young v. Polo Retail, LLC,*
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)………………………………………….8

## STATUTES

Cal. Lab. Code §1194…………………………………………………………………….3

Cal. Lab. Code §1194.2…………………………………………………………………….3

Cal. Lab. Code §1197…………………………………………………………………….3

Cal. Lab. Code §226.7……………………………………………………...……………….3

Cal. Lab. Code §203…..……………………………………………………………………….3

iii

Cal. Lab. Code §512…..…………………………………………………………………….3

## **RULES**

Federal Rule of Civil Procedure 23(a)….……………………………………………………12

Federal Rule of Civil Procedure 23(b)….…………………………………………..…12, 13

Federal Rule of Civil Procedure 23(a)(1)….……...…………………………………………12

Federal Rule of Civil Procedure 23(a)(4)...……………………………………………………12

Federal Rule of Civil Procedure 23(g)(1)(C)(i)….…..………………………….……………15

Federal Rule of Civil Procedure 23(g)(1)(C)(ii)….…..………………………………………15

## **TREATISES**

*Manual for Complex Litigation*, (4th Ed. 2004)….……………………………………...…..9

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

**INTRODUCTION**

Plaintiffs Angela Badami, Lennon Bronsema, Benjamin Campopiano, Kathryn Raven and Audrey Ward ("Plaintiffs") and Defendant Grassroots Campaigns, Inc. ("GCI") respectfully move for preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement" or "Settlement") filed concurrently with this Motion.  The Settlement Agreement resolves the claims of: Plaintiffs; everyone who will have opted in to the case as of the date of preliminary approval; and selectively defined class members (primarily everyone who worked for GCI in California).  Per the Settlement, GCI will pay $600,000.00 into a common fund which will be allocated so that Plaintiffs and affected class members receive anywhere from 10 to almost 45 percent of the wages they could have recovered at trial.  The Settlement also includes important non-monetary concessions, such as the promise that GCI will hire a human resources professional to help the company comply with federal and state wage-and-hour law.

The Settlement satisfies all criteria for preliminary approval under federal law:  it was reached after extensive investigation and arms'-length negotiations overseen by an experienced and impartial mediator; it is also presumptively fair and well within the range of reasonableness for class and/or collective action settlements of this kind.  For these reasons, the parties jointly request that the Court: (1) grant preliminary approval to the Settlement Agreement; (2) certify a settlement class, as specifically defined herein; (3) appoint Plaintiffs' counsel to represent the class; (4) approve the proposed Notice of Class Action Settlement ("Notice"), a true and correct copy of which is attached as Exhibit 2 to the Settlement Agreement; and (5) establish a schedule for final disposition and approval of the settlement.

**FACTS AND PROCEDURAL HISTORY**

**1.    General Background**

GCI is a campaign fundraising company that was founded in December 2003.  It does not

1

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

appear to have much, if any, tangible product or inventory. (Declaration of Robert S. Nelson in support of Joint Motion for Order Provisionally Certifying Settlement Class and Preliminarily Approving Settlement and Proposed Notice to Class Members ("Nelson Decl."), ¶¶7-9). Although the company has offices in multiple cities, it owns no significant assets (it rents most, if not all, of its office space). (Nelson Decl., ¶8). Dun & Bradstreet gives the company a below-average credit rating. (Nelson Decl., ¶8).

## 2.    The Case

Plaintiffs' counsel ("Class Counsel") conducted significant pre-filing interviews and investigation of the case in the winter and spring of 2007, which revealed the above-noted facts. (Nelson Decl., ¶¶5,7). Consequently, Class Counsel perceived a significant risk that GCI would declare bankruptcy if costs and/or liability in the case became too high. (Nelson Decl., ¶9). Regardless, Class Counsel filed a Complaint for Damages ("Complaint") on behalf of Plaintiffs on July 2, 2007. (Complaint). The Complaint alleged that GCI misclassified employees as exempt from state and federal overtime, minimum wage and meal and rest break requirements. (Complaint, ¶¶23, 33, 44, 54, 63). It also claimed that GCI required its employees to work "observation days" (i.e., mandatory training) for which they were not paid. (Complaint, ¶38).

Plaintiffs sought to bring the case on behalf of both themselves and six different subclasses of employees. The subclasses included: (1) employees in California who were paid set salaries that were less than the state's required minimum for white collar exempt employees ("Salaried Subclass"); (Complaint, ¶10); (2) employees in California who were required to work unpaid training days ("California Non-Payment Subclass"); (Complaint, ¶10); (3) employees outside of California who were required to work unpaid training days ("Non-California Non-Payment Subclass"); (Complaint, ¶10); (4) employees who worked as Canvass Directors (one of the job titles GCI uses) outside of California ("Canvass Director Subclass"); (Complaint, ¶10);

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

(5) employees who worked as Assistant Canvass Directors ("Assistant Canvass Director Subclass") outside California; (Complaint, ¶10); and (6) employees who worked as Field Organizers outside California ("Field Organizer Subclass"). (Complaint, ¶10).

The Complaint alleged numerous wage-and-hour claims under both state and federal law. (Complaint, ¶¶66-124). Specifically, the Complaint sought unpaid overtime and minimum wages under both the Fair Labor Standards Act ("FLSA") and California Labor Code Sections 1194 and 1197; (Complaint, ¶¶66-78); wages for failure to provide meal and rest breaks as required by California Labor Code Sections 226.7 and 512; (Complaint, ¶¶104-109); waiting time penalties under California Labor Code Section 203; (Complaint, ¶¶116-119); liquidated damages under both the FLSA and California state law (Labor Code Section 1194.2); and fees and costs.

GCI denied substantially all of Plaintiffs' allegations. (Answer to Complaint for Damages and Collective Action and Jury Trial Request).

Approximately 35 people opted in to the case between July and November 2007. (Nelson Decl., ¶10). Class Counsel interviewed all of them in detail and also reviewed thousands of pages of documents they provided regarding their respective work experiences with GCI. (Nelson Decl., ¶10). In October 2007, the parties stipulated (with the Court's approval) to delay further litigation so they could mediate. (Stipulation and [Proposed] Order Continuing October 26, 2007 Case Management Conference). As a condition of that stipulation, GCI voluntarily provided information needed to assess the extent of the class members' claims. (Nelson Decl., ¶¶12,13; November 14, 2007 letter from Bernie Siebert to Robert S. Nelson (and attached spreadsheet), attached as Exhibit 1 to Nelson Decl.).

**3.    Mediation**

The parties mediated on November 21, 2007 with Judge Edward Infante (Ret.), one of the foremost overtime class action mediators in California (The Recorder newspaper recently named

3

Judge Infante the top mediator in the Bay Area). (Nelson Decl., ¶15). The mediation lasted an entire day. (Nelson Decl., ¶15). The parties conducted arms' length "caucus" negotiations through Judge Infante. (Nelson Decl., ¶16). The mediation culminated in a tentative settlement, relevant terms of which are summarized below. (Nelson Decl., ¶16).

## SETTLEMENT TERMS

The proposed Settlement Agreement includes both monetary and non-monetary concessions by GCI. (Settlement Agreement, ¶10.a-i). The Agreement seeks to create a Settlement Class consisting of all members of the Salaried Subclass and the California Non-Payment Subclass who do not opt out of the Settlement. (Settlement Agreement, ¶1.h). In addition, the Settlement Class will also include people who filed (or will file) valid Consents to Join prior to the date of preliminary approval (but who are not already members of any of the subclasses included in the Settlement) ("Opt Ins").[1] (Settlement Agreement, ¶1.h). Unless they opt in, members of the Non-California Non-Payment Class, Canvass Director Subclass, Assistant Director Subclass and the Field Organizer Class will not be affected by this Settlement.

## 1.    Monetary Relief

GCI agrees to pay $600,000.00 into a common fund from which *all* members of the Settlement Class will be paid. (Settlement Agreement, ¶10.a). Also to be paid from this settlement sum are: (1) attorneys' fees not to exceed $150,000.00 (or 25 percent of the overall settlement amount); (Settlement Agreement, ¶11.b); (2) incentive payments of $2,000.00 to each of the named Plaintiffs; (Settlement Agreement, ¶11.g); (3) costs of Settlement administration, estimated to be approximately $20,000.00; (Settlement Agreement, ¶11.f); and (4) Class Counsel's costs, up to a maximum of $8,500.00. (Settlement Agreement, ¶11.b).

---

[1] It is questionable whether the Opt Ins need to be included in the Settlement Class, *per se,* or whether their claims can be handled individually.

4

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

Both the Notice and an Opt-Out Form (the Notice contains detailed instructions about when and how class members can opt out) will be sent to Settlement Class members' last known addresses via first class mail. (Settlement Agreement, ¶14). Class members will be given 45 days to opt out. (Settlement Agreement, ¶22). Returned Notices will be sent to any forwarding addresses that are provided. (Settlement Agreement, ¶17). Envelopes that are returned as undeliverable will be sent to whatever new addresses can be found through skip tracing. (Settlement Agreement, ¶17). Payments returned to the Claims Administrator after the same efforts used to mail the Notice (i.e., forwarding to new addresses, skip tracing, etc.) will be paid to Environmental Action, a 501(c)(3) charity selected by GCI. (Settlement Agreement, ¶13.e).

## 2.    Payments to Settlement Class Members

### a.    General

The net amount payable to Settlement Class members includes the overall Settlement Sum minus the attorneys' fees/costs, incentive payments and administration costs noted above ("Net Settlement Payment"). Different percentages of the Net Settlement Payment will be reserved for each of the different subclasses that make up the Settlement Class; overall percentages are based on the number of claimants in each subclass and the nature, amount and apparent viability of their respective claims. (Nelson Decl., ¶¶18-22). All total, 79 percent of the Net Settlement Payment will be paid to members of the Salaried Subclass; 12 percent will be paid to the Non-Payment Subclass; and the remaining 9 percent will be paid to the Opt Ins. (Nelson Decl., ¶¶19,20).

### b.    Payments to members of the Salaried Subclass

Members of the Salaried Subclass will be paid at least $215.00 per week that they worked for GCI. (Nelson Decl., ¶20). This represents anywhere from 18 to more than 44 percent of the

5

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

1    wages the Salaried Subclass members could have received had they prevailed at trial. [2]

2    According to information on GCI's web site (and documents and information provided by

3    Plaintiffs and other witnesses), members of the Salaried Subclass worked anywhere from 25 to 60

4    hours of overtime per week, depending on job title.[3]  (Nelson Decl., ¶14).  Given the employees'

5    rate of pay ($11.49 per hour) and the payments they already received ($455.00 per week), Class

6    Counsel calculated that members of the Salaried Subclass were owed anywhere from $490.00 to

7    approximately $1,200.00 in unpaid wages per week that they worked.  (Nelson Decl., ¶14).

8

9    **c.    Payments to members of the California Non-Payment Subclass**

10    Members of the California Non-Payment Subclass will be paid at least $25.00 per

11    employee.  (Nelson Decl., ¶21).  This represents approximately 36 percent of the wages they

12    could have recovered if they prevailed at trial.[4]

13    According to information from GCI, member of the California Non-Payment Subclass

14    worked one unpaid observation day apiece.  (Nelson Decl., ¶14).  Observation days lasted

15    approximately 9.5 hours.  (Nelson Decl., ¶14).  Given California's minimum wage rate during the

16    time period relevant to this litigation ($6.75) and the state's requirement that time in excess of

17    eight hours be paid at time-and-a-half, Class Counsel estimates that members of the Non-Payment

18    Subclass were each owed $70.00 in unpaid wages.  (Nelson Decl., ¶14).

19

20    **d.    Payments to Opt Ins**

21    Class Counsel estimates that approximately 40 people not already included in the Salaried

22    or California Non-Payment Subclasses will have opted into this case as of the date of the

23

24    _____

25    [2] Calculated only from outstanding *wages*, not penalties and liquidated damages.
     [3] Several different job titles were included in the Salaried Subclass (e.g., Canvass Director,

26    Assistant Canvass Director, Field Organizer, etc.).  Evidence indicated that the different jobs had
     different requirements regarding mandatory work time.

27    [4] Again, these percentages are calculated only from outstanding wages, not penalties and
     liquidated damages.

28
     6

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

preliminary approval hearing.  (Nelson Decl., ¶¶10, 14).  Anywhere from five to 10 of them will likely be members of the Non-California Non-Salaried Subclass (and therefore will be paid set sums of $25.00 per person).  (Nelson Decl., ¶10).  The remaining Opt Ins will be members of the Canvass Director, Assistant Director and Field Organizer Subclasses ("Exempt Classes") who likely worked a total of approximately 400 weeks, altogether.  (Nelson Decl., ¶14).  According to information on GCI's web site (and documents and information provided by Plaintiffs, Opt Ins and other witnesses), the members of the Exempt Classes worked anywhere from 50 to 60 hours of overtime per week, depending on job title.  (Nelson Decl., ¶14).  Given the employees' rate of pay ($11.49 per hour) and the payments they already received ($455.00 per week), Class Counsel estimates that the Exempt Opt Ins were each owed anywhere from $830.00 to approximately $930.00 in unpaid wages per week that they worked.  (Nelson Decl., ¶14).  Payments of approximately $92.00 per week are therefore approximately 10 to 11 percent of the wages the Exempt Opt Ins could have received had they prevailed at trial.  Opt Ins who are members of the Non-California Non-Payment class will receive more than 50 percent of their outstanding wages.

**2.    Non-Monetary Relief**

GCI has agreed to make several policy changes that will directly benefit class members who are still employed with the company, as well as GCI's other employees.

**a.    Hiring a Human Resources Official**

By far the most significant non-monetary concession is the agreement to hire a human resources ("HR") professional.  (Settlement Agreement, 10.c).  Following entry of final judgment in this case, GCI will hire a new employee (i.e., someone not already affiliated with the company) to serve as the company's HR manager and/or generalist.

**b.    No unpaid training days**

GCI also warrants that it has abolished the practice of requiring employees to work unpaid

7

observation days at the start of their respective employment.  (Settlement Agreement, 10.d).

### c.      Expense reimbursements

GCI furthermore promises to implement a written policy governing employee expense reimbursements.  (Settlement Agreement, 10.e).  The policy will clearly explain, among other things, which specific expenses are reimbursable and the procedure employees should follow to apply for and receive reimbursements.  (Settlement Agreement, 10.e).

### d.      Days off

Following entry of final judgment, GCI agrees to offer at least one day off per work week (defined as seven consecutive work days) to employees working in states in which such time off is required by law.  (Settlement Agreement, 10.f).

## ARGUMENT

## I.      PRELIMINARY APPROVAL OF THIS SETTLEMENT IS APPROPRIATE.

It is well-settled that compromise and settlement of class action lawsuits is preferred to litigation.  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982); Safeco Corp. v. Van Bronkhorst, 529 F.2d 943, 950 (9th Cir. 1976) (settlement preference is "particularly true in class actions").  The approval of a proposed class action settlement is left to the discretion of the trial court.  Churchill Village, L.L.C. v. General Elec., 361 F.3d 566, 576 (9th Cir. 2004).  Courts should be hesitant to second-guess settlements that are achieved through arms'-length negotiations with no indication of fraud, collusion or other improper conduct.  Weinberger v. Kendrick, 698 F.2d 61, 74 (2nd Cir. 1982).

To grant preliminary approval to this Settlement, the Court need only be satisfied that it falls within the range of possible approval, or the "range of reasonableness."  See, e.g., Young v. Polo Retail, LLC, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); In re DJ Orthopedics, Inc., No. 01-CV-2238KRBB, 2004 WL 1445101, at *2 (S.D. Cal. June 21,

8

2004).  Preliminary approval is intended to be an initial evaluation of the fairness of the proposed

settlement made on the basis of written submissions and informal presentation by the settling

parties.  *Manual for Complex Litigation*, *Fourth* ("Manual"), §21.632 (4th Ed. 2004).

**A.    The terms of the Settlement Agreement are fair and within the range of reasonableness.**

When gauging whether a proposed class action settlement is fair and reasonable, courts

should consider: (1) the experience and opinion of class counsel; (2) whether the settlement is the

product of good faith negotiations conducted at arms' length; (3) the amount offered in the

settlement; and (4) the risks, complexity and duration of further litigation.  See, e.g., Roberts v.

Heim, 1991 WL 427888, at *2 (N.D. Cal. Aug. 28, 1991).

**1.    The Settlement Agreement resulted from informed, arms' length negotiations by experienced class counsel.**

Given the Settlement terms and the inherent risks of further litigation (including

bankruptcy by GCI), Class Counsel concluded that the Settlement was fair, reasonable and in the

bests interests of the Settlement Class.  (Nelson Decl., ¶17).  Class Counsel is experienced in

litigating wage-and-hour class actions.  (Nelson Decl., ¶¶3,4).  His assessment should be given

"significant weight."  See, e.g., Kirkorian v. Borelli, 695 F.Supp. 446, 451 (N.D. Cal. 1988); Ellis

v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Counsel's assessment of the merits of the Settlement is certainly well-informed.  He

vigorously investigated the case by interviewing all Plaintiffs, Opt Ins and other relevant

witnesses; gathering and reviewing thousands of pages of documents related to GCI's job

requirements and pay practices; and diligently researching GCI's business and financial

condition.  (Nelson Decl., ¶¶5-8,10).  Counsel then used that research, in conjunction with data

voluntarily provided by GCI (e.g., number of employees in each subclass, number of weeks each

employee worked, etc.) to comprise detailed estimates of both the likelihood and extent of

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

liability.  (Nelson Decl., ¶14).  In short, Class Counsel negotiated the Settlement Agreement with thorough knowledge of the strengths and weaknesses of the case, and the amounts necessary to compensate class members for the harm they suffered.  (Nelson Decl., ¶¶5-8,14).  The Settlement also was reached only after arms' length negotiations under the supervision of a knowledgeable and experienced class action mediator.  (Nelson Decl., ¶¶15,16).

> **2.    The Settlement amount and payment allocations are fair and reasonable.**

Settlement amounts should be considered reasonable so long as they fall within a "range of reasonableness" that depends by the myriad specifics of each individual case.

> **a.    Claim allocations**

GCI has agreed to pay $600,000.00 into a common fund that will be paid out to Settlement Class members, regardless whether they affirmatively make claims.  (Settlement Agreement, 10.a).  Although that amount will be divided among approximately 2,100 Settlement Class Members, the vast majority of those people (approximately 1,950) have wage claims of less than $70.00.  (Nelson Decl., ¶14; Exh. 1).   Settlement Class Members will receive payments ranging from 10 percent to almost 45 percent of their respective wage claims, a significant recovery in light of the inherent risks if this case were to proceed through litigation.  (Nelson Decl., ¶¶8,9,17).  The parties stipulate to the reasonableness of the above-noted payment allocations.  (Nelson Decl., ¶18).

The allocations to the Settlement Class are also fair and reasonable given that individual recoveries vary depending on nature of claims, time worked, and likelihood of success on the merits.  Although some employees admittedly will receive a lower percentage of their claims than others, that is primarily because the size and apparent strength of claims varies significantly amongst the different subclasses.[5]  For example, the Non-Payment Subclass is receiving the

---

[5] Plaintiffs are not implying that they did not have ultimate confidence in all the claims they articulated.  GCI effectively admitted to some of the claims, hence all others (i.e., those that GCI said it would fight) were relatively weaker by comparison.

10

1    lowest dollar amounts of any group, but its percentage recovery is the highest (approximately 36

2    percent) because its total wage claims were relatively small (only $70.00 per employee).

3    Conversely, the Salaried Subclass is receiving by far the most of any group (at least $215.00 per

4    week, per employee), but their percentage recovery is relatively low because their overall wage

5    claims are very high.  At the end of the day, Settlement Class members who worked the longest

6    and/or had the strongest claims will be paid more than employees who worked only a short time,

7    and/or had more tenuous claims.

8        **b.    Incentive payments**

9        The Settlement's proposed $2,000.00-per-Plaintiff incentive awards are also fair, given

10   the extensive work Plaintiffs did (and risk they assumed) in starting this litigation.  Plaintiffs

11   attended multiple meetings, provided hundreds of pages of documents, made themselves available

12   for interviews with both counsel and the media, and generally did whatever was asked to further

13   the interests of the litigation.  (Nelson Decl., ¶5).  The incentive payments fairly and reasonably

14   compensate Plaintiffs for these efforts without disproportionately depriving absent Class

15   Members of deserved recovery (the incentive payments represent only about a third of a percent

16   of the overall Settlement sum).

17       **3.    The Settlement provides meaningful non-monetary relief.**

18       As previously described, the Settlement Agreement also includes significant and valuable

19   non-monetary relief, both to Settlement Class members and GCI's employee population as a

20   whole.  (Settlement Agreement, 10.c-f).  Most significantly, GCI agrees to hire a HR

21   director/generalist who will hopefully help the company avoid future situations similar to those

22   that gave rise to this litigation.  (Settlement Agreement, 10.c).  The company has also abolished

23   unpaid observation days and implemented an expense reimbursement policy.  (Settlement

24   Agreement, 10.d, e).

25       **4.    The Settlement provides reasonable compensation in light of the significant
             risks of proceeding through litigation.**

26

27       GCI appeared ready and willing to vigorously defend this case.  Furthermore, Class

28   ///

11

MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
CASE NO. C 07-03465 JSW

Counsel perceived a substantial risk that GCI could declare bankruptcy at any point during litigation, which would likely have left class members with little, if any, monetary recovery. (Nelson Decl., ¶9).  In light of all these factors, Class Counsel believed the Settlement fit easily within the range of reasonableness because it achieved significant monetary and non-monetary benefits in a case where both success on the merits and ultimate recovery of any damage award were far from certain.  (Nelson Decl., ¶17).  Settlement Class Members will also receive Settlement benefits faster than they would receive awards obtained after a lengthy and risky trial.

## II.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AS WELL.

To grant preliminary approval of this class action Settlement, the Court must also make a determination that the proposed Settlement Class satisfies *all* the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  See, e.g., In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768 (3rd Cir. 1995).  As explained below, all the requirements of certification for settlement purposes are met for this proposed Settlement Class.

### 1.    Numerosity

The proposed Settlement Class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The proposed Settlement Class consists of approximately 2,100 members of the Salaried Subclass, the Non-Payment Subclass, and the Opt-Ins.  A class of this size plainly satisfies Rule 23's requirement of numerosity.  1 *Newberg* §3.5 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, *and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone*."). (Emphasis added).

### 2.    Commonality

Rule 23(a) requires that there be questions of law or fact common to the class.  Only a minimal showing of commonality need be made.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1020 (9th Cir. 1998).  Common issues abound in each of the various subclasses that make up the Settlement Class:  In the Salaried Subclass, Plaintiffs allege is that GCI uniformly paid all

12

members of the class the same set salary (i.e., $24,000.00 per year).  (Complaint, ¶¶19, 29, 39, 50, 60).  In the Non-Payment Subclasses, Plaintiffs allege that all members of the subclass were uniformly required to work unpaid "observation" days at the start of their employment.  (Complaint, ¶38).  The Opt Ins were also all required to perform regimented work duties pursuant to detailed, uniform job descriptions.  These common factual issues give rise to common questions of law, such as whether the employees are exempt from minimum wage and overtime.

### 3.    Typicality

Rule 23 requires that the Plaintiffs' claims be typical of those of the absent class members.  Typicality is achieved if named plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  The Plaintiffs in this case are members of all the different subclasses they seek to represent.  All the Plaintiffs worked in California for set salaries that were less than the state's mandatory minimum for exempt employees.  (Nelson Decl., ¶5). Plaintiff Campopiano also worked an unpaid observation day at the start of his employment.  (Nelson Decl., ¶5).  The claims of the Plaintiffs therefore are typical of those of the class they seek to represent.

### 4.    Adequacy

Rule 23(a) finally requires that the named plaintiff(s) "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is met when:  (a) the named plaintiff(s) appear able to prosecute an action vigorously through qualified counsel; and (b) the class representative(s) is/are not disqualified by interests antagonistic to the unnamed class members.  Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

There is no conflict between the named Plaintiffs and the Settlement Class; Plaintiffs' claims are closely in line with those of the entire Class.  Plaintiffs also have and will continue to aggressively and competently assert the interests of the Class through counsel who is skilled and experienced in wage-and-hour class action.  (Nelson Decl., ¶¶3-4,24).

### 5.    Rule 23(b)

In addition to the requirements articulated above, Rule 23 also requires that proposed

///

13

1    classes meet one of the categories included in Rule 23(b).  Under Rule 23(b), class certification is

2    appropriate if "the court finds that the questions of law or fact common to the members of the

3    class predominate over any questions affecting only individual members, and that a class action is

4    superior to other available methods for the fair and efficient adjudication of the controversy."

5    Fed. R. Civ. P.  23(b).  For the reasons already discussed, class action is the best method to

6    resolve this case.  The class action mechanism will achieve economies of scale for the Settlement

7    Class, as well as conserving resources of the parties, their attorneys, and the federal judicial

8    system.  There is no other method by which all of the putative Settlement Class members' claims

9    will be as fairly, adequately or efficiently resolved as through a class action.

10   **III.    THE PROPOSED NOTICE PROVIDES FAIR AND ADEQUATE NOTICE TO**
11   **ABSENT CLASS MEMBERS.**

12           Class notices must be fair and adequate, both in content and in the way that they are

13   circulated to absent class members.  The proposed Notice satisfies both these requirements.

14   (Notice, attached as Exhibit 2 to the Settlement Agreement).

15           The content of the Notice fully complies with both due process and the Rules of Civil

16   Procedure.  Rule 23 requires that class notices provide "the best notice practicable under the

17   circumstances, including individual notice to all members who can be identified through

18   reasonable effort."  Fed. R. Civ. P.  23(b).  Notice must specifically describe, in plain, easy-to-

19   understand terms: the nature of the action; the definition of the class being certified; the class

20   members' claims, issues or defenses; class members' rights to enter appearances through counsel;

21   members' rights to opt out of a case, and when and how opt outs can be effected; and the binding

22   effect of any judgments that may be entered.  Id.  The proposed Notice in this case contains all

23   this information, as well as a summary of the Settlement terms, estimated attorneys' fees, and the

24   date, time and place of the Settlement approval hearing.  (Notice).

25           Regarding circulation, GCI will provide the Claims Administrator with the names and last

26   known addresses so that the Notice can be forwarded to all members of the Settlement Class.  The

27   Claims Administrator will re-send any Notices that are returned with forwarding addresses; if

28   ///

                                         14

1  Notices are returned without new addresses, the Claims Administrator will consult credit bureau

2  information and then forward the Notices to whatever new addresses are found.[6]  Class Members

3  will then have a fair and sufficient amount of time (45 days from the date Notice is mailed) to

4  object to the Settlement.  For these reasons, both the content of the Notice and the parties' plan to

5  disseminate it are fair and in compliance with both the FRCP and due process.

6  **IV.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.**

7          Class counsel must be appointed when classes are certified under Rule 23.  Fed. R. Civ.

8  Proc. 23(g)(1)(C)(i).  Rule 23 establishes specified criteria that courts must consider when

9  appointing class counsel, including:  (1) the work counsel has done to identify or investigate

10  potential claims in the action; (2) counsel's experience in handling class, collective and/or

11  representative actions, and claims of the type asserted in the action; (3) counsel's knowledge of

12  the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R.

13  Civ. Proc. 23(g)(1)(C)(i).  No single factor is determinative.  Courts are also permitted to consider

14  any other matter(s) that may be pertinent to counsel's ability to fairly and adequately represent the

15  interests of the class.  Fed. R. Civ. Proc. 23(g)(1)(C)(ii).

16          Class Counsel is experienced in wage-and-hour litigation and class and/or collective

17  actions; Class Counsel is currently lead attorney and/or local counsel in other overtime class

18  actions currently pending before this Court, including *Cayer v. Washington Mutual Bank,* No. C

19  07-00875 JSW.  (Nelson Decl., ¶¶3-4).  Class Counsel has also diligently identified and

20  investigated potential claims in this case, and is ready and willing to devote necessary resources

21  to prosecute this case.  (Nelson Decl., ¶¶5-8, 10, 24).  For these reasons, the Court should appoint

22  Class Counsel to represent the Settlement Class in this action.

23

24

25  *///*

26  _____

27  [6] GCI will provide the Claims Administrator with Social Security numbers of any employees
    whose Notices are returned without forwarding addresses.  (Settlement Agreement, ¶16).

28                                                 15

1    **V.    THE PROPOSED SCHEDULING ORDER.**

2    The parties propose the following schedule for the remainder of this case:

3

| March 14, 2008 | Notice mailed to Class Members; |
|---|---|
| April 30, 2008 | Deadline to file objections to the Settlement Agreement and Opt-Out Notices;[7] |
| May 23, 2008 | Deadline to file responses to objections to the Settlement, if any; |
| May 23, 2008 | Deadline for Motion for Final Approval and Application for Attorneys' Fees; |
| June 9, 2008 | Deadline for Claims Administrator to notify parties of opt-outs; |
| June 16, 2008; | Deadline to provide the Court with declaration of due diligence by Claims Administrator; |
| June 27, 2008 9:00 a.m. | Hearing on Motion for Final Approval and Attorneys' Fees; |
| 15 days after approval | Deadline to deposit all settlement funds with the Claims Administrator; |
| 20 days after approval | Deadline to mail incentive payments to named Plaintiffs and attorneys' fees and costs (if any), to Class Counsel; and |
| 45 days after approval | Deadline to mail settlement payments to Class Members. |

22

23    **CONCLUSION**

24    For the foregoing reasons, the parties jointly and respectfully request that the Court: (1)

25    grant preliminary approval to the Settlement Agreement; (2) certify the Settlement Class; (3)

26    _____

27    [7] The parties agree to execute the Settlement Agreement in the form filed with this Motion. (Nelson Decl., ¶25).

28                                                16

1    appoint Plaintiffs' counsel to represent the class; (4) approve the proposed Notice; and (5)

2    establish a schedule for final disposition and approval of the settlement.

3          DATED:  December 21, 2007                    NELSON LAW GROUP

4

5

6                                                        _____/S/ Robert S. Nelson_____
                                                         Robert S. Nelson, Esq.

7                                                        Attorneys for Plaintiffs
                                                         Angela Badami, Lennon Bronsema,

8                                                        Benjamin Campopiano, Kathryn Raven and
                                                         Audrey Ward (and all others similarly

9                                                        situated)

10

11         DATED:  December 21, 2007                    SHERMAN & HOWARD L.L.C.

12

13                                                       _____/S/ W.V. Siebert_____
                                                         W. V. Siebert, Esq.

14                                                       Attorneys for Defendant
                                                         Grassroots Campaigns, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          17
     MPA ISO JOINT MOTION TO APPROVE SETTLEMENT
     CASE NO. C 07-03465 JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28