ROBERT S. NELSON (CA SBN 220984)
RNelson@nelsonlawgroup.net
NELSON LAW GROUP
900 Cherry Avenue, Suite 300
San Bruno, CA  94066
Telephone:  (650) 794-2760
Facsimile:  (650) 794-2761

*Attorneys for Plaintiffs*

WALTER V. SIEBERT *(Pro Hac Vice)*
BSiebert@sah.com
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202-3622
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940

RAYMOND L. WHEELER (CA SBN 52886)
RWheeler@mofo.com
SHARYN K. FUNAMURA (CA SBN 193518)
SFunamura@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone:  (650) 813-5600
Facsimile:  (650) 494-0792

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGELA BADAMI,<br>LENNON BRONSEMA,<br>BENJAMIN CAMPOPIANO,<br>KATHRYN RAVEN,<br>AUDREY WARD,<br>and all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>GRASSROOTS CAMPAIGNS, INC.,<br><br>Defendant. | Case No. C 07-03465 JSW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR ORDER:  (1) GRANTING FINAL APPROVAL TO THE PARTIES' CLASS ACTION SETTLEMENT; (2) FINALLY CERTIFYING THE PROPOSED SETTLEMENT CLASS; (3) FINALLY APPROVING THE PROPOSED SETTLEMENT AGREEMENT; AND (4) AFFIRMING PRIOR RULINGS AND FINDINGS FROM THE PRELIMINARY APPROVAL ORDER**<br><br>Date:  June 27, 2008<br>Time:  9:00 a.m.<br>Judge:  Hon. Jeffrey S. White<br>Ctrm:  2 |

## **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………..1

SUMMARY OF SETTLEMENT TERMS……………………………………………….……...2

      1.      Monetary Relief……………………………………………………………..2

      2.      Payments to Settlement Class Members…………………………………….3

            a.  General…………………………………………………………….3

            b.  Payments to members of the Salaried Subclass……………………4

            c.  Payments to members of the California Non-Payment Subclass…….4

            d.  Payments to Opt Ins……………………………………………….5

      3.      Non-Monetary Relief………………………………………………………..5

            a.  Hiring a Human Resources official……………………………….5

            b.  No unpaid training days…………………………………………...6

            c.  Expense reimbursements………………………………………….6

            d.  Days off……………………………………………………………6

      4.      Release of Claims…………………………………………………………..6

LEGAL STANDARD……………………………………………………………………………7

ARGUMENT……………………………………………………………………………………..8

I.      THE PARTIES' SETTLEMENT FULFILLS ALL THE CRITERIA
       THAT THE NINTH CIRCUIT REQUIRES FOR FINAL SETTLEMENT
       APPROVAL………………………………………………………………………..8

A.     The terms of the Settlement Agreement are fair and within the
       range of reasonableness……………………………………………………………8

      1.      GCI's offer is fair and reasonable…………..………………………………9

      2.      The Settlement Agreement provides important non-monetary
           relief……………………………………………………………………......9

B.     Settlement Class members have reacted favorably to the Settlement………………10

C.     Significant risks exist for Plaintiffs if the case proceeds through litigation………....10

D.     Class Counsel supported the Settlement after arms' length negotiations
       and extensive research and investigation……………………………………….....11

II.  THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION……………..…..11

CONCLUSION……………………………………………………………………….....12

# TABLE OF AUTHORITIES

## CASES

*Boyd v. Bechtel Corp.,*
    485 F.Supp.610 (N.D. Cal. 1979)………………………………………………………8

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980)………………………………………………….....11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)…………………………………………...……......8

*Kirkorian v. Borelli,*
    695 F.Supp. 446 (N.D. Cal. 1988).……………………………………………….11

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)…………………………………………….....……8

## RULES

Federal Rule of Civil Procedure 23(a)……………………………………………..………..11

Federal Rule of Civil Procedure 23(b)(3)……………………………………………......…11

Federal Rule of Civil Procedure 23(e)……………………………………………….......……1, 7

## **INTRODUCTION**

The parties in this case, Plaintiffs Angela Badami, Lennon Bronsema, Benjamin Campopiano, Kathryn Raven and Audrey Ward ("Plaintiffs"), and all others similarly situated, and Defendant Grassroots Campaigns, Inc. ("GCI") have agreed to a settlement that provides comprehensive monetary and injunctive relief to Plaintiffs and affected class members (collectively referred to as the "Settlement Class"). Per the settlement that the parties have reached ("Settlement"), GCI will pay $600,000.00 into a common fund which will be allocated so that Settlement Class members receive anywhere from 10 to almost 45 percent of the wages they could have recovered at trial. The Settlement also includes important non-monetary concessions, such as the promise that GCI will hire a Human Resources professional to help the company comply with federal and state wage-and-hour law. The Settlement easily satisfies the "fair, reasonable, and adequate" standard used for final approval in the Ninth Circuit. F.R.C.P. 23(e).

Class members have responded favorably to the Settlement. Notice was mailed to 2,091 class members on March 28, 2008, detailing terms of the Settlement and offering instructions how to opt out and/or object. (Declaration of Robert S. Nelson in Support of Joint Motion for Order Granting Final Approval of Settlement, e*t al.* ("Nelson Decl."), ¶21). No one objected and only about 25 class members opted out. (Nelson Decl., ¶23). In fact, at least two class members independently wrote to the Court expressing their satisfaction with, and support of, the Settlement. (Nelson Decl., ¶25; April 1, 2008 letter from Richard Aaron Mead ("Mead Letter"), attached as Exhibit 1 to Nelson Decl; April 28, 2008 letter from Teri Solomo ("Solomo Letter"), attached as Exhibit 2 to Nelson Decl.). Class counsel, Robert S. Nelson of the Nelson Law Group ("Class Counsel"), who is experienced in litigating overtime class action cases, firmly believes that the Settlement is in the best interests of the class. (Nelson Decl., ¶15). For these reasons, the parties jointly request that the Court issue an Order: (1) granting final approval of the parties'

Settlement; (2) finally certifying the proposed Settlement Class; (3) finally approving the Settlement Agreement; and (4) affirming relevant prior findings and rulings from the Court's Preliminary Approval Order of March 10, 2008 (including, but not limited to, findings/rulings that the Settlement is fair and adequate; appointing class representatives and Class Counsel; and approving proposed Settlement distributions).

### SUMMARY OF SETTLEMENT TERMS

The proposed Settlement Agreement includes both monetary and non-monetary concessions by GCI. (Amended Joint Stipulation of Settlement and Release Between Plaintiffs Angela Badami, Lennon Bronsema, Benjamin Campopiano, Kathryn Raven, Audrey Ward and All Others Similarly Situated, and Defendant Grassroots Campaigns, Inc. ("Settlement Agreement"), filed with this Court on March 10, 2008 (Docket No. 64)). The Agreement seeks to create a Settlement Class consisting of all of GCI employees who worked in California between December 2004 and the date that the parties' Settlement was preliminarily approved (March 10, 2008) and who: (1) was paid a set salary of less than $28,080, or who worked an unpaid training day; and (2) did not opt out of the Settlement. (Settlement Agreement, ¶1.h). In addition, the Settlement Class will also include people who filed (or will file) valid Consents to Join prior to the date of preliminary approval (but who are not already members of any of the subclasses included in the Settlement) ("Opt Ins"). (Settlement Agreement, ¶1.h). GCI employees not meeting any of the above-noted descriptions will not be affected by this Settlement.

**1.    Monetary Relief**

GCI agrees to pay $600,000.00 into a common fund from which *all* members of the Settlement Class will be paid. (Settlement Agreement, ¶10.a). Also to be paid from this settlement sum are: (1) attorneys' fees not to exceed $150,000.00 (or 25 percent of the overall settlement amount); (Settlement Agreement, ¶11.b); (2) incentive payments of $2,000.00 to each

2

of the named Plaintiffs; (Settlement Agreement, ¶11.g); (3) costs of Settlement administration, estimated to be approximately $20,000.00; (Settlement Agreement, ¶11.f); and (4) Class Counsel's costs, up to a maximum of $8,500.00. (Settlement Agreement, ¶11.b).

Both the Notice and an Opt-Out Form (the Notice contains detailed instructions about when and how class members can opt out) were sent to Settlement Class members' last known addresses via first class mail. (Settlement Agreement, ¶14; Nelson Decl., ¶21). Class members were then given 45 days to opt out. (Settlement Agreement, ¶22). Returned Notices were sent to any forwarding addresses that were provided. (Settlement Agreement, ¶17; Nelson Decl., ¶22). Envelopes returned as undeliverable were sent to whatever new addresses were available through skip tracing. (Settlement Agreement, ¶17; Nelson Decl., ¶22). Payments returned to the Claims Administrator after the same efforts used to mail the Notice (i.e., forwarding to new addresses, skip tracing, etc.) will be paid to Environmental Action, a 501(c)(3) charity selected by GCI. (Settlement Agreement, ¶13.e).

**2.    Payments to Settlement Class Members**

    **a.    General**

The net amount payable to Settlement Class members includes the overall Settlement Sum minus the attorneys' fees/costs, incentive payments and administration costs noted above ("Net Settlement Payment"). Different percentages of the Net Settlement Payment will be reserved for each of the different subclasses that make up the Settlement Class; overall percentages are based on the number of claimants in each subclass and the nature, amount and apparent viability of their respective claims. (Nelson Decl., ¶¶16-20). All total, 79 percent of the Net Settlement Payment will be paid to members of the Salaried Subclass; 12 percent will be paid to the Non-Payment Subclass; and the remaining 9 percent will be paid to the Opt Ins. (Nelson Decl., ¶17).

///

3

MPA ISO JOINT MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. C 07-03465 JSW

**b.   Payments to members of the Salaried Subclass**

Members of the Salaried Subclass will be paid at least $215.00 per week that they worked for GCI. (Nelson Decl., ¶18). This represents anywhere from 18 to more than 44 percent of the wages the Salaried Subclass members could have received had they prevailed at trial.[1]

According to information on GCI's web site (and documents and information provided by Plaintiffs and other witnesses), members of the Salaried Subclass worked anywhere from 25 to 60 hours of overtime per week, depending on job title.[2] (Nelson Decl., ¶12). Given the employees' rate of pay ($11.49 per hour) and the payments they already received ($455.00 per week), Class Counsel calculated that members of the Salaried Subclass were owed anywhere from $490.00 to approximately $1,200.00 in unpaid wages per week that they worked. (Nelson Decl., ¶12).

**c.   Payments to members of the California Non-Payment Subclass**

Members of the California Non-Payment Subclass will be paid at least $25.00 per employee. (Nelson Decl., ¶19). This represents approximately 36 percent of the wages they could have recovered if they prevailed at trial.[3]

According to information from GCI, member of the California Non-Payment Subclass worked one unpaid observation day apiece. (Nelson Decl., ¶12). Observation days lasted approximately 9.5 hours. (Nelson Decl., ¶12). Given California's minimum wage rate during the time period relevant to this litigation ($6.75) and the state's requirement that time in excess of eight hours be paid at time-and-a-half, Class Counsel estimates that members of the Non-Payment Subclass were each owed $70.00 in unpaid wages. (Nelson Decl., ¶12).

---

[1] Calculated only from outstanding *wages*, not penalties and liquidated damages.
[2] Several different job titles were included in the Salaried Subclass (e.g., Canvass Director, Assistant Canvass Director, Field Organizer, etc.). Evidence indicated that the different jobs had different requirements regarding mandatory work time.
[3] Again, these percentages are calculated only from outstanding wages, not penalties and liquidated damages.

4
MPA ISO JOINT MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. C 07-03465 JSW

### d. Payments to Opt Ins

Approximately 40 people not already included in the Salaried or California Non-Payment Subclasses opted into this case. (Nelson Decl., ¶9). Anywhere from five to 10 of them are members of the Non-California Non-Salaried Subclass (and therefore will be paid set sums of $25.00 per person). (Nelson Decl., ¶9). The remaining Opt Ins are members of the Canvass Director, Assistant Director and Field Organizer Subclasses ("Exempt Classes") who likely worked a total of approximately 400 weeks, altogether. (Nelson Decl., ¶9). According to information on GCI's web site (and documents and information provided by Plaintiffs, Opt Ins and other witnesses), the members of the Exempt Classes worked anywhere from 50 to 60 hours of overtime per week, depending on job title. (Nelson Decl., ¶12). Given the employees' rate of pay ($11.49 per hour) and the payments they already received ($455.00 per week), Class Counsel estimates that the Exempt Opt Ins were each owed anywhere from $830.00 to approximately $930.00 in unpaid wages per week that they worked. (Nelson Decl., ¶12). Payments of approximately $92.00 per week are therefore approximately 10 to 11 percent of the wages the Exempt Opt Ins could have received had they prevailed at trial. Opt Ins who are members of the Non-California Non-Payment class will receive more than 50 percent of their outstanding wages.

### 3. Non-Monetary Relief

GCI has agreed to make several policy changes that will directly benefit class members who are still employed with the company, as well as GCI's other employees.

### a. Hiring a Human Resources Official

By far the most significant non-monetary concession is the agreement to hire a human resources ("HR") professional. (Settlement Agreement, 10.c). Following entry of final judgment in this case, GCI will hire a new employee (i.e., someone not already affiliated with the company)

///

5

MPA ISO JOINT MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. C 07-03465 JSW

to serve as the company's HR manager and/or generalist.

### b. No unpaid training days

GCI also warrants that it has abolished the practice of requiring employees to work unpaid observation days at the start of their respective employment. (Settlement Agreement, 10.d).

### c. Expense reimbursements

GCI furthermore promises to implement a written policy governing employee expense reimbursements. (Settlement Agreement, 10.e). The policy will clearly explain, among other things, which specific expenses are reimbursable and the procedure employees should follow to apply for and receive reimbursements. (Settlement Agreement, 10.e).

### d. Days off

Following entry of final judgment, GCI agrees to offer at least one day off per work week (defined as seven consecutive work days) to employees working in states in which such time off is required by law. (Settlement Agreement, 10.f).

## 4. Release of Claims

If the Court grants final approval to the Settlement Agreement, then class members who did not opt out prior to May 12, 2008 will release all claims for overtime, minimum wages, liquidated damages, attorneys' fees and other wage-and-hour claims, arising under both federal and state laws, and which arose from their employment with Defendant.

The Settlement Agreement states:

> Released Claims by Settlement Class Members. Upon Effective Final Approval and Payment of amounts set forth herein, and except as to such rights or claims as may be created by this Joint Stipulation, the Settlement Class Members who do not opt out, fully release and discharge GCI, its parent, subsidiary, and affiliated corporations and entities, and each of their respective officers, directors, agents, employees, partners, attorneys, insurers, and shareholders, and their respective predecessors, successors, and assigns (the "Released Parties"), from any and all known or Unknown claims, debts, liabilities, demands, obligations, guarantees,

///

costs, expenses, attorneys' fees, damages, liquidated damages, interest, penalties, action or causes of action whatever kind or nature, including claims, that were averred or could have been averred in this action relating to or arising from their employment in a Covered Position during the Covered Period or otherwise based upon the facts alleged in the Complaint, including all claims related to misclassification of exempt status, missed meal periods and/or rest breaks; failure to pay minimum wage or overtime pay; failure to reimburse business expenses; failure to provide timely accurate wage statements and maintain required payroll records; waiting time penalties; interest, liquidated damages and other penalties under federal and state law, including but not limited to the California Labor Code, California Business and Professions Code section 17200 *et seq.*, and the Fair Labor Standards Act, as amended ("Settlement Class Members Released Claims"). The Settlement Class further releases and waive any rights they may have had to the Settlement Class Members' Released Claims pursuant to California Code of Civil Procedure § 1542.

Released Claims By Class Representatives. Upon Effective Final Approval, the Class Representatives hereby fully and finally releases and discharges the Released Parties (defined in Paragraph 32, above) from any and all of the Released Claims (defined in Paragraph 32, above) and from any and all other claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, known or Unknown claims, suspected or unsuspected, that they may have had, now have, or may hereafter claim to have against the Released Parties, including without any limitation any claims arising out of, or relating in any way to, the Class Representative's hiring by, employment with, separation of employment with the Released Parties ("Class Representative's Released Claims"), arising or accruing from the beginning of time up through Effective Final Approval ("Class Representative's Released Period"). The Class Representatives' Released Claims include, but are not limited to, claims arising from or dependent on the California Labor Code; the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200 *et seq.*; the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*; the California common law of contract and tort; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Portal to Portal Act, 29 U.S.C. § 251 *et seq.* The Class Representatives specifically release and waive any rights they may have had pursuant to California Code of Civil Procedure § 1542.

(Settlement Agreement, ¶¶ 32 & 33).

## LEGAL STANDARD

The Ninth Circuit has recognized a strong policy in favor of voluntary settlement of complex class actions. "[V]oluntary conciliation and settlement are the preferred means of

///

dispute resolution." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). This is "especially true in complex class action cases" which involve "difficulties of proof, uncertainty of outcome, and length and complexity of litigation." Id.

Federal Rule of Civil Procedure 23(e) requires that class action settlements be "fair, adequate and reasonable" in order to be approved. The Ninth Circuit has identified a list of factors relevant to the final approval inquiry, including: (1) the amount offered in the settlement; (2) the reaction of the class to the proposed settlement; (3) the strength of the plaintiffs' case, balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial…"; (4) the "extent of discovery completed" and the "stage of the proceedings…"; and (5) the informed views of experienced class counsel. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

The "recommendations of plaintiffs' counsel should be given a presumption of reasonableness," especially when counsel has experience litigating class actions. Boyd v. Bechtel Corp., 485 F.Supp. 610, 622 (N.D. Cal. 1979). When deciding final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Officers for Justice, 688 F.2d at 625.

## ARGUMENT

### I. THE PARTIES' SETTLEMENT FULFILLS ALL THE CRITERIA THAT THE NINTH CIRCUIT REQUIRES FOR FINAL SETTLEMENT APPROVAL.

#### A. GCI's offer is fair and reasonable.

The Settlement should be approved because it contains generous monetary and non-monetary concessions to the Settlement Class.

8

### 1. The monetary relief provided by the Settlement Agreement is substantial and fairly allocated.

GCI has agreed to pay $600,000.00 into a common fund that will be paid out to Settlement Class members, regardless whether they affirmatively make claims. (Settlement Agreement, 10.a). Although that amount will be divided among approximately 2,100 Settlement Class Members, the vast majority of those people (approximately 1,950) have wage claims of less than $70.00. (Nelson Decl., ¶12). Settlement Class Members will receive payments ranging from 10 percent to almost 45 percent of their respective wage claims, a significant recovery in light of the inherent risks if this case were to proceed through litigation. (Nelson Decl., ¶¶12, 18-20). The parties stipulate to the reasonableness of the above-noted payment allocations. (Nelson Decl., ¶16).

The allocations to the Settlement Class are also fair and reasonable given that individual recoveries vary depending on nature of claims, time worked, and likelihood of success on the merits. Although some employees admittedly will receive a lower percentage of their claims than others, that is primarily because the size and apparent strength of claims varies significantly amongst the different subclasses. For example, although one subclass is receiving the lowest dollar amounts of any group, its percentage recovery is the highest (approximately 36 percent) because its total wage claims were relatively small (only $70.00 per employee). Conversely, another subclass is receiving by far the most of any group (at least $215.00 per week, per employee), but its percentage recovery is relatively low because its members' overall wage claims are very high. At the end of the day, Settlement Class members who worked the longest and/or had the strongest claims will be paid more than employees who worked only a short time, and/or had more tenuous claims. A settlement cannot get much fairer or more reasonable than that.

### 2. The Settlement Agreement provides important non-monetary relief.

The Settlement Agreement also includes significant and valuable non-monetary relief, both to Settlement Class members and GCI's employee population as a whole. (Settlement

9

MPA ISO JOINT MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. C 07-03465 JSW

Agreement, 10.c-f). Most significantly, GCI agrees to hire a HR director/generalist who will hopefully help the company avoid future situations similar to those that gave rise to this litigation. (Settlement Agreement, 10.c). The company has also abolished unpaid observation days and implemented an expense reimbursement policy. (Settlement Agreement, 10.d, e).

**B.     Settlement Class members have reacted favorably to the Settlement.**

As previously noted, Settlement Class members have responded favorably to the Settlement. Notice was mailed to 2,091 class members on March 28, 2008, detailing terms of the Settlement and offering instructions how to opt out and/or object. (Nelson Decl., ¶¶21-22). No one objected and only about 25 class members opted out. (Nelson Decl., ¶23). In fact, Settlement Class members independently wrote to the Court expressing their whole-hearted satisfaction with, and support of, the Settlement. (Nelson Decl., ¶23; Mead Letter; Solomo Letter). The authors stated that they were: "[V]ery much in favor of the Settlement;" (Mead Letter); and "totally in agreement with the lawsuit against" Defendant. (Solomo Letter). It therefore appears that the Settlement Class strongly supports the Settlement.

**C.     Significant risks exist for Plaintiffs if the case proceeds through litigation.**

The Settlement furthermore reasonably benefits class members in light of the significant risks of further litigation. GCI appeared ready and willing to vigorously defend this case. Furthermore, Class Counsel perceived a substantial risk that GCI could declare bankruptcy at any point during litigation, which would likely have left class members with little, if any, monetary recovery. (Nelson Decl., ¶¶7-8; 15). In light of all these factors, Class Counsel believed the Settlement was both fair and reasonable because it achieved significant monetary and non-monetary benefits in a case where both success on the merits and ultimate recovery of any damage award were far from certain. (Nelson Decl., ¶15). Settlement Class Members will also receive Settlement benefits faster than they would receive awards obtained after a lengthy and risky trial.

///

10

**D.     Class Counsel supported the Settlement only after arms' length negotiations and extensive research and investigation.**

Given the Settlement terms and the inherent risks of further litigation (including bankruptcy by GCI), Class Counsel concluded that the Settlement was fair, reasonable and in the bests interests of the Settlement Class. (Nelson Decl., ¶15). Class Counsel is experienced in litigating wage-and-hour class actions. (Nelson Decl., ¶¶3,4). His assessment should be given "significant weight." See, e.g., Kirkorian v. Borelli, 695 F.Supp. 446, 451 (N.D. Cal. 1988); Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Class Counsel's assessment of the merits of the Settlement is certainly well-informed. He vigorously investigated the case by interviewing all Plaintiffs, Opt Ins and other relevant witnesses; gathering and reviewing thousands of pages of documents related to GCI's job requirements and pay practices; and diligently researching GCI's business and financial condition. (Nelson Decl., ¶¶5-7; 9-12). Class Counsel then used that research, in conjunction with data voluntarily provided by GCI (e.g., number of employees in each subclass, number of weeks each employee worked, etc.) to comprise detailed estimates of both the likelihood and extent of liability. (Nelson Decl., ¶12). In short, Class Counsel negotiated the Settlement Agreement with thorough knowledge of the strengths and weaknesses of the case, and the amounts necessary to compensate class members for the harm they suffered. (Nelson Decl., ¶¶5-7; 9-14). The Settlement also was reached only after arms' length negotiations under the supervision of a knowledgeable and experienced class action mediator. (Nelson Decl., ¶¶13-14). The mediator, Judge Edward Infante, "strongly supported" the Settlement. (Nelson Decl., ¶14).

**II.     THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION.**

The Amended Order Granting Motion for Preliminary Approval of Class Action Settlement and Class Certification ("Preliminary Approval Order") of March 10, 2008 conditionally certified this case as a class action and also certified the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Court furthermore ruled that the Settlement Class satisfies all of the requirements of Rule 23(a) and (b)(3), and that the

///

11

proposed Settlement distributions were fair and equitable; it also appointed the named Plaintiffs as class representatives, and the Nelson Law Group as Class Counsel.

For the reasons stated in the Plaintiffs' Motion for Preliminary Approval and the Court's Preliminary Approval Order, and in light of the absence of any objection to this Settlement (in fact, Settlement Class members have openly supported it), the Court should reaffirm its earlier findings and/or rulings from the Preliminary Approval Order and grant final certification of the Settlement Class.

## CONCLUSION

For the foregoing reasons, the parties jointly request that the Court issue an Order: (1) granting final approval of the parties' Settlement; (2) finally certifying the proposed Settlement Class; (3) approving the Settlement Agreement; and (4) affirming relevant prior findings and rulings from the Court's Preliminary Approval Order of March 10, 2008 (including, but not limited to, findings/rulings that the Settlement is fair and adequate; appointing class representatives and Class Counsel; and approving proposed Settlement distributions).

DATED: May 23, 2008                    NELSON LAW GROUP


                                       _/S/ Robert S. Nelson_____
                                       Robert S. Nelson, Esq.
                                       Attorneys for Plaintiffs
                                       Angela Badami, Lennon Bronsema,
                                       Benjamin Campopiano, Kathryn Raven and
                                       Audrey Ward (and all others similarly
                                       situated)

DATED: May 23, 2008                    SHERMAN & HOWARD L.L.C.


                                       _/S/ W.V. Siebert_____
                                       W. V. Siebert, Esq.
                                       Attorneys for Defendant
                                       Grassroots Campaigns, Inc.

12

MPA ISO JOINT MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. C 07-03465 JSW