1   ROBERT S. NELSON (CA SBN 220984)
    RNelson@nelsonlawgroup.net
2   NELSON LAW GROUP
    900 Cherry Avenue, Suite 300
3   San Bruno, CA 94066
    Telephone: (650) 794-2760
4   Facsimile: (650) 794-2761

5   *Attorneys for Plaintiffs*

6   WALTER V. SIEBERT *(Pro Hac Vice)*        RAYMOND L. WHEELER (CA SBN 52886)
    BSiebert@sah.com                          RWheeler@mofo.com
7   SHERMAN & HOWARD L.L.C.                   SHARYN K. FUNAMURA (CA SBN 193518)
    633 Seventeenth Street, Suite 3000        SFunamura@mofo.com
8   Denver, CO 80202-3622                     MORRISON & FOERSTER LLP
    Telephone: (303) 297-2900                 755 Page Mill Road
9   Facsimile: (303) 298-0940                 Palo Alto, CA 94304-1018
                                              Telephone: (650) 813-5600
10                                            Facsimile: (650) 494-0792

11  *Attorneys for Defendant*

12

13                      UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                        SAN FRANCISCO DIVISION

16

17  ANGELA BADAMI,                            Case No. C 07-03465 JSW
    LENNON BRONSEMA,
18  BENJAMIN CAMPOPIANO,                      **MEMORANDUM OF POINTS AND**
    KATHRYN RAVEN,                            **AUTHORITIES IN SUPPORT OF**
19  AUDREY WARD,                              **PLAINTIFFS' APPLICATION FOR**
    and all others similarly situated         **ATTORNEYS' FEES AND**
20                                            **REIMBURSEMENT OF COSTS AND**
                                              **EXPENSES**
21               Plaintiffs,
22          v.                                Date:    June 27, 2008
                                              Time:    9:00 a.m.
23  GRASSROOTS CAMPAIGNS, INC.,               Judge:   Hon. Jeffrey S. White
                                              Ctrm:    2
24               Defendant.

25

26

27

28                                            i

1

## **TABLE OF CONTENTS**

2

INTRODUCTION………………………………………………………..……………1

FACTS…………………………………………………………………………………2

       1.    General Background……………………………………………..…2

       2.    The Case……………………………………………………………2

       3.    Mediation……………………………………………………………4

       4.    Notice to the Settlement Class………………………………………5

       5.    Fees and costs to date………………………………………………5

ARGUMENT………………………………………………………………….…6

I.     THE REQUESTED FEES ARE REASONABLE AND
APPROPRIATE……………………………………………………...…6

A.    The requested attorneys' fees are reasonable under the percent-of-recovery
method used to calculate fee awards in the Ninth Circuit…………………………6

B.    The requested fees are reasonable under the lodestar method as well……………7

II.    THE COSTS FOR WHICH PLAINTIFFS SEEK REIMBURSEMENT
ARE REASONABLE, TOO…………………………………..……………...9

CONCLUSION…………………………………………………………………....10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **CASES**

*Blum v. Stenson,*
    465 U.S. 886 (1984)…………………………………………………………8

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)…………………………………………………………6

*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000)…………………………………………………8

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)…………………………………………...………7

*In re GNC Shareholder Litigation,*
    668 F.Supp. 450 (W.D. Pa. 1987)……………………………….…………9

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990)…………………………………………...……6

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)…………………………………………………6

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002)…………………………………………...……6, 8

## **RULES**

Federal Rule of Civil Procedure 23(e)………………………………………...……...….6

Federal Rule of Civil Procedure 23(h)……………………………….……………...…...1

1

**INTRODUCTION**

2

Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs Angela Badami, Lennon

3

Bronsema, Benjamin Campopiano, Kathryn Raven, Audrey Ward ("Plaintiffs") and all others

4

similarly situated (referred to collectively with the Plaintiffs as the "Settlement Class") hereby

5

apply to the Court for reimbursement for their counsel's attorneys' fees and costs in the amount

6

of $150,000.00 (for fees) and $8,234.10 (for costs). The amounts requested are well within the

7

parameters for fee awards under either the percentage-of-recovery or lodestar methods of

8

calculation. The requested fees constitute 25 percent of a common fund recovery achieved by the

9

10

Settlement Class, the presumptive contingency allowed for class actions in the Ninth Circuit.

11

Attorneys' fee and cost amounts, negotiated at arms' length, should be approved if the

12

negotiated amounts are fair and reasonable. The fees and costs Plaintiffs are requesting were

13

negotiated as part of a detailed settlement of a wage-and-hour class action case ("Settlement" or

14

"Settlement Agreement"). The Settlement was made under the supervision of an experienced

15

class action mediator during arms' length, "caucus" negotiations. As already noted, they are also

16

17

fair and reasonable given that they comply with the Ninth Circuit's presumptive requirements for

18

fee awards. The fees are even more reasonable when viewed in light of the significant recovery

19

that was achieved in this case. Per the parties' Joint Stipulation of Settlement and Release

20

("Settlement Agreement"), Defendant Grassroots Campaigns, Inc. ("GCI") will pay $600,000.00

21

into a common fund which will be allocated so that Settlement Class members receive anywhere

22

from 10 to almost 45 percent of the wages they could have recovered at trial. Settlement Class

23

24

members do not even need to submit claims to receive their respective shares of the settlement

25

proceeds; as long as they do not opt out, their money will automatically be mailed to them. The

26

Settlement also includes important non-monetary concessions, such as the promise that GCI will

27

hire a Human Resources professional to help the company comply with federal and state wage-

28

1

and-hour law.  The Settlement will significantly benefit both the Settlement Class, as well as current and future generations of GCI employees.

In March 2008, the parties sent a formal notice to Settlement Class members notifying them of the parties' proposed Settlement Agreement and explaining, in detail, the proposed fee and cost allocations.  No members of the Settlement Class objected, either to the Settlement Agreement as a whole or to the proposed fee/cost amounts; in fact, at least two members of the Settlement Class independently wrote to the Court to express their strong support of the Settlement.  Additional members of the Settlement Class also called Plaintiff to express their satisfaction with the Settlement.

For these reasons, Plaintiffs respectfully ask this Court to GRANT their Application for reimbursement for their counsel's attorneys' fees and costs in the amount of $150,000.00 (for fees) and $8,234.10 (for costs).

## FACTS

### 1.    General Background

GCI is a campaign fundraising company that was founded in December 2003.  It does not have any tangible product or inventory.  (Declaration of Robert S. Nelson in support of Plaintiffs' Application for Attorneys' Fees and Reimbursement of Costs and Expenses ("Nelson Decl."), ¶8).  Although the company has offices in multiple cities, it owns no significant assets (it rents most, if not all, of its office space).  (Nelson Decl., ¶8).  Dun & Bradstreet gives the company a below-average credit rating.  (Nelson Decl., ¶7).

### 2.    The Case

Plaintiffs first approached attorney Robert S. Nelson ("Class Counsel") about the possibility of taking this case in January 2007.  (Nelson Decl., ¶5).  At the time, Class Counsel

///

2

1  was a solo practitioner whose practice was barely six months old.  (Nelson Decl., ¶9).  He had to

2  delay and, in some cases, turn down other work opportunities because of the demands of this

3  case.  (Nelson Decl., ¶9).

4          Class Counsel conducted significant pre-filing interviews and investigation of the case in

5  the winter and spring of 2007, which revealed the above-noted facts.  (Nelson Decl., ¶¶5-7; 10).

6  Consequently, Class Counsel perceived a significant risk that GCI would declare bankruptcy if

7  costs and/or liability in the case became too high.  (Nelson Decl., ¶8).  Regardless, Class Counsel

8  filed a Complaint for Damages ("Complaint") on behalf of Plaintiffs on July 2, 2007.

9  (Complaint).  The Complaint alleged that GCI misclassified employees as exempt from state and

10 federal overtime, minimum wage and meal and rest break requirements.  (Complaint, ¶¶23, 33,

11 44, 54, 63).  It also claimed that GCI required its employees to work "observation days" (i.e.,

12 mandatory training) for which they were not paid.  (Complaint, ¶38).

13

14          Plaintiffs sought to bring the case on behalf of both themselves and six different

15 subclasses of employees.  The subclasses included: (1) employees in California who were paid set

16 salaries that were less than the state's required minimum for white collar exempt employees

17 ("Salaried Subclass"); (Complaint, ¶10); (2) employees in California who were required to work

18 unpaid training days ("California Non-Payment Subclass"); (Complaint, ¶10); (3) employees

19 outside of California who were required to work unpaid training days ("Non-California Non-

20 Payment Subclass"); (Complaint, ¶10); (4) employees who worked as Canvass Directors (one of

21 the job titles GCI uses) outside of California ("Canvass Director Subclass"); (Complaint, ¶10);

22 (5) employees who worked as Assistant Canvass Directors ("Assistant Canvass Director

23 Subclass") outside California; (Complaint, ¶10); and (6) employees who worked as Field

24 Organizers outside California ("Field Organizer Subclass").  (Complaint, ¶10).

25

26

27 ///

28                                                    3

1
2
3
4
5
6
7
8

The Complaint alleged numerous wage-and-hour claims under both state and federal law. (Complaint, ¶¶66-124). Specifically, the Complaint sought unpaid overtime and minimum wages under both the Fair Labor Standards Act ("FLSA") and California Labor Code Sections 1194 and 1197; (Complaint, ¶¶66-78); wages for failure to provide meal and rest breaks as required by California Labor Code Sections 226.7 and 512; (Complaint, ¶¶104-109); waiting time penalties under California Labor Code Section 203; (Complaint, ¶¶116-119); liquidated damages under both the FLSA and California state law (Labor Code Section 1194.2); and fees and costs.

9
10

GCI denied substantially all of Plaintiffs' allegations. (Answer to Complaint for Damages and Collective Action and Jury Trial Request).

11
12
13
14
15

Approximately 35 people opted in to the case between July and November 2007. (Nelson Decl., ¶10). Class Counsel interviewed all of them in detail and also reviewed thousands of pages of documents they provided regarding their respective work experiences with GCI. (Nelson Decl., ¶10).

16    **3.    Mediation**

17
18
19
20
21
22
23
24
25
26

The parties mediated on November 21, 2007 with Judge Edward Infante (Ret.), one of the foremost overtime class action mediators in California (The Recorder newspaper recently named Judge Infante the top mediator in the Bay Area). (Nelson Decl., ¶12). The mediation lasted an entire day. (Nelson Decl., ¶12). The parties conducted arms' length "caucus" negotiations through Judge Infante. (Nelson Decl., ¶13). The mediation culminated in a tentative settlement, terms of which were memorialized in the Settlement Agreement. (Nelson Decl., ¶13). GCI agreed to pay $600,000.00 into a common fund from which *all* members of the Settlement Class would be paid. (Settlement Agreement, ¶10.a). Also to be paid from this settlement sum are: (1)

27
28

///

4

attorneys' fees not to exceed $150,000.00 (or 25 percent of the overall settlement amount); (Settlement Agreement, ¶11.b); and (2) Class Counsel's costs, up to a maximum of $8,500.00. (Settlement Agreement, ¶11.b).

**4.      Notice to the Settlement Class**

Notice of the Settlement was mailed to the 2,091 Settlement Class members on March 28, 2008.  (Nelson Decl., ¶15).  The Notice detailed terms of the Settlement (including the proposed fee and cost reimbursements to Class Counsel) and offered instructions how to opt out and/or object.  (Nelson Decl., ¶15).  No one objected to any part of the Settlement, including the fee and cost provisions.  Only about 25 class members opted out of the Settlement.  (Nelson Decl., ¶17). In fact, at least two Settlement Class members independently wrote to the Court expressing their satisfaction with, and support of, the Settlement.  (Nelson Decl., ¶19; April 1, 2008 letter from Richard Aaron Mead ("Mead Letter"); April 28, 2008 letter from Teri Solomo ("Solomo Letter").

**5.      Fees and costs to date**

Between January 2007 and the present, Class Counsel spent 186.4 hours on matters related to this case.  (Nelson Decl., ¶24).  This time was spent interviewing Plaintiffs, Settlement Class members and other witnesses; researching GCI and the various legal issues germane to the case; drafting Plaintiffs' complaint and various other pleadings in the case; preparing for and attending mediation; and drafting documents needed to approve the Settlement.  (Nelson Decl., ¶25).  Class Counsel's hourly rate for this matter is $450.00.  (Nelson Decl., ¶26).  This rate is consistent with attorneys of comparable experience performing wage-and-hour class action work in the San Francisco Bay Area.  (Nelson Decl., ¶27).  Attorneys who act as lead counsel in class action cases in the Bay Area sometimes charge as much as $600.00 or more per hour.  (Nelson Decl., ¶27).

///

Class Counsel has also incurred a total of $8,234.10 in "hard" costs and expenses related to this case (i.e., costs that would not have otherwise been incurred, rather than overhead costs). (Nelson Decl., ¶¶28-29). These costs included, among other things: (1) mediation fees; (2) initial design and development of a web site for putative class members; (3) expert consultation and services; (4) copying and messenger costs; and (5) filing and service fees. (Nelson Decl., ¶28).

It is likely that Class Counsel will have to expend additional time and/or incur additional costs in connection with final administration and payment of the Settlement.

<u>**ARGUMENT**</u>

I.      <u>**THE REQUESTED FEES ARE REASONABLE AND APPROPRIATE.**</u>

A.      **The requested attorneys' fees are reasonable under the percentage-of-recovery method used to calculate fee awards in the Ninth Circuit.**

"Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is "fundamentally fair, adequate, and reasonable." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 963 (9th Cir. 2003) (citing Fed. R. Civ. Proc. 23(e)). Fees can be calculated as a percentage of the monetary recovery achieved in the settlement, so long as the recovery is part of a "common fund" and the fees do not exceed 25 percent of the fund. <u>See, e.g.</u>, <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the "common fund" doctrine, attorneys who create a common fund for a group of persons may rightfully be awarded a percentage of the fund to compensate them for fees and costs. <u>See generally</u> <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980). The Ninth Circuit has endorsed the percent-of-recovery theory as a fair way to calculate reasonable attorneys' fees when contingent fee litigation produces a common fund. <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fees are generally "calculated as a percentage of the recovery..").

This case involves common fund recovery since GCI has agreed to pay a set amount,

/// 6

$600,000.00, to all Settlement Class members who do not opt out. (Settlement Agreement, IV.10.a). Settlement shares for people who opt out will be redistributed among the remaining Settlement Class, rather than reverting back to GCI. (Settlement Agreement, IV.12). Settlement Class members do not even need to submit claims to receive their money, but rather will have payments sent to them automatically. (Settlement Agreement, IV.12). The only ways that Settlement Class members will not receive payment is if they cannot be found after diligent effort by the Claims Administrator (including mail forwarding and skip tracing). (Nelson Decl., ¶16). In those situations, the members' respective Settlement shares will be donated to charity. Under no circumstances will any of the Settlement proceeds revert back to GCI.

Plaintiffs seek attorneys' fees in the amount of 25 percent of the $600,000.00 common fund that was created for the Settlement Class, or $150,000.00 total. This amount is reasonable given that it conforms to the presumptive 25 percent limit for class action fee awards, and in light of the significant benefit that was achieved through Class Counsel's efforts. The Settlement Class will receive payments ranging from 10 to almost 50 percent of the wages they could have recovered at trial (depending on size and strength of individual claims). These payments are guaranteed, and they will be received far sooner than if the case continued to litigate. In addition, the Settlement creates important non-monetary concessions (e.g., a new Human Resources director, no more unpaid training days, mandatory days off, etc.) that will benefit both the Settlement Class and GCI's current and future employees. (Settlement Agreement, IV). As such, the Settlement contains significant benefit for which 25 percent is a fair and justifiable fee.

**B.    The requested fees are reasonable under the lodestar method as well.**

The fees requested for Class Counsel are also fair and reasonable under the lodestar method of fee calculation. Courts sometimes use a lodestar formula as a check on the reasonableness of the percentage-of-recovery method. See, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). Under the lodestar formula, the Court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Caudle v. Bristow Optical Co., 224 F.3d 1014, 1028 (9th Cir. 2000). The hourly rate assessed

7

should be "in line with those prevailing in the community for services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 (1984). Once a base lodestar figure has been determined (i.e., number of hours times hourly rate), the Court has discretion to enhance it to account for unique circumstances such as exceptional risks or results, preclusion of other employment, fees customarily charged for similar work, etc. Vizcaino, 290 F.3d at 1047-51. Courts generally use between 1.0 and 4.0 as a multiplier for lodestar awards. Id.

Class Counsel spent a total of 186.4 hours on this case, a modest number considering the results that were achieved. (Nelson Decl., ¶24). This time was spent interviewing Plaintiffs, Settlement Class members and other witnesses; researching GCI and the various legal issues germane to the case; drafting Plaintiffs' complaint and various other pleadings in the case; preparing for and attending mediation; and drafting documents needed to approve the Settlement. (Nelson Decl., ¶¶5-7; 10; 25).

Class Counsel's hourly rate for this matter is $450.00, standard for attorneys of comparable experience performing wage-and-hour class action work in the San Francisco Bay Area (in fact, this rate is low for lead counsel, some of whom charge as much as $600.00 or more for similar work). (Nelson Decl., ¶26). The base lodestar amount for Class Counsel's work is therefore $83,880.00. This amount will likely increase if Class Counsel performs additional work related to Settlement administration (e.g., responding to questions from Settlement Class members and/or the claims administrator, etc.).

At this point, a lodestar multiplier of only about 1.75 would be needed to get to the $150,000.00 figure that Plaintiffs are seeking. This is well within the 1-to-4 range that is customary in the Ninth Circuit. Id. This multiplier is warranted given that: (1) the Settlement Class achieved an extremely fast result, given that the case was only first filed in July 2007 (it settled in November 2007); (2) Class Counsel had to turn down and/or delay other work when he took on this case; (Nelson Decl., ¶9); (3) there were significant risks associated with taking the case, namely, the risk that GCI would declare bankruptcy at any point during litigation; (Nelson

8

Decl., ¶¶7-8); (4) the Settlement benefits people beyond just the Settlement Class, namely, GCI's current and future employees; (Settlement Agreement, IV); and (5) Settlement proceeds will be automatically sent to Settlement Class members, without them having to affirmatively file claims.

Settlement Class members were specifically told, via the Notice, about Class Counsel's fee and cost claims and how those claims could be challenged if class members thought them unjust. (Nelson Decl., ¶15). No one objected. (Nelson Decl., ¶15). In fact, at least two Settlement Class members wrote to the Court to express their strong support for the Settlement. (Nelson Decl., ¶¶19-20). It therefore appears that the Settlement Class supports (or at least does not oppose) Plaintiff's application for attorneys' fees and costs.

## II.  THE COSTS FOR WHICH PLAINTIFFS SEEK REIMBURSEMENT ARE REASONABLE, TOO.

Class Counsel incurred various costs in this case for which Plaintiffs also seek reimbursement. (Nelson Decl., ¶¶28-29). These costs included, among other things: (1) mediation fees; (2) initial design and development of a web site for putative class members; (3) expert consultation and services; (4) copying and messenger costs; and (5) filing and service fees. (Nelson Decl., ¶28). All total, Class Counsel incurred $8,234.10 in costs and expenses related to this case. (Nelson Decl., ¶29). All these costs were advanced by Class Counsel, with no guarantee that they would ever be recovered. These costs were necessary in connection with the presentation of this litigation and for the benefit of Plaintiffs and the Settlement Class; as such, they are reimbursable to Class Counsel. In re GNC Shareholder Litigation, 668 F.Supp. 450, 452 (W.D. Pa. 1987). The parties also specifically agreed, in the Settlement Agreement, that Class Counsel should be reimbursed costs and expenses from the Settlement sum, up to a maximum of $8,500.00. (Settlement Agreement). The agreement to reimburse costs was negotiated at arms' length with the assistance of an experienced class action mediator. (Nelson Decl., ¶30) There was no trade-off in relief to the Class Members in exchange for attorneys' fees and/or costs. (Nelson Decl., ¶30).

///

9

MPA ISO PLAINTIFFS' APPLICATION FOR FEES AND COSTS
CASE NO. C 07-03465 JSW

1

2

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court approve this Application for attorneys' fees and costs in the amount of $150,000.00 (for fees) and $8,234.10 (for costs).

DATED:  May 23, 2008                       NELSON LAW GROUP


                                          ___/S/ Robert S. Nelson_____
                                          Robert S. Nelson, Esq.
                                          Attorneys for Plaintiffs
                                          Angela Badami, Lennon Bronsema,
                                          Benjamin Campopiano, Kathryn Raven and
                                          Audrey Ward (and all others similarly
                                          situated)

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28